## BELLAR v CENCI et

Ohio Appeals, 2nd Dist, Franklin Co

No 2973.   Decided March 6, 1939

Vorys, Sater, Seymour & Pease, Columbus, for plaintiff-appellee.

Cowan, Adams & Adams, Columbus, for defendants-appellants.

### OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment on behalf of the plaintiff against the defendant, Dienst, in the sum of $2500.00.

The action was for damages for personal injuries suffered by plaintiff claimed to be the result of the negligence of the defendants.   Before the cause was submitted to the jury, defendant Cenci was dismissed and the cause proceeded against defendant Dienst.   On the 12th of September, 1936, about 10:30 in the morning, plaintiff, with three passengers, was driving her Ford automobile eastwardly on U. S. Route 40 at a point about four miles east of the village of Jacksontown, Ohio.   The defendant at that time was engaged as a construction contractor in building a new road for the state of Ohio on said route, beginning about

three miles east of Jacksontown and extending eastwardly therefrom. The plaintiff on the morning of the accident was moving eastwardly on this road under construction and when she had reached a place about a mile and a half from the beginning of the new work, where it continued in a cut through a hill, she was detoured to the right of the new work and on to the old road. The beginning of this detour was near the top of a hill and continued down hill for a distance of about a half a mile in an S curve. At the bottom of the hill there was a sharp turn to the right which was abrupt and at this place the old road extended into the new construction. It was the claim of the plaintiff that at this place between the old road and the new there was a fill of dirt and gravel in which there were deep ruts varying from 6 to 19 inches; that the old road was about a foot lower than the new and that the south half thereof was 18 inches higher than the north half. It was also claimed that because of the sharpness of the curve at the bottom of the hill and the similarity in color between the dirt and fill of the new construction and the concrete of the old road it was very difficult for a motorist to mark where one ended and the other began or to note the ruts and depressions at the place of the ending of the old road.

The negligence asserted against the defendant was the permitting of the gravel and dirt to remain at the connection of the roads, new and old, failing to warn the plaintiff of the various dangerous places at and about the joinder of the roads and the maintenance of the dangerous condition at or near the connection caused by deep grooves and ruts from trucks of defendant. The answer of the defendant was a general denial of any negligence and an averment that the accident was caused by the sole negligence of the plaintiff. The reply was a general denial of the affirmative matter in the answer. Upon submission of the cause to the jury it returned a verdict of $5480.82 made up of general damages in the sum of $5000.00 and $480.82 special damages for hospital, doctor's bills and medical expenses. The trial judge upon a motion for new trial found that the verdict was excessive and reduced the amount thereof to $2500.00 and entered judgment on the verdict.

The errors assigned are all incorporated under one general statement in the brief of defendant, namely,

"that the verdict is against the manifest weight of the evidence and was induced by passion and prejudice and by the irregularities and unusual circumstances occurring at the trial."

We will undertake to discuss these errors in the order in which they are presented in the brief of counsel for the appellant. The first irregularity is directed to the statement of plaintiff's witness, Ross Cochran, on cross-examination wherein the following question was put and answer made,

"Q. Mr. Cochran you made a statement concerning this accident in writing a few days after the accident, did you not?
A. I think there was a man, possibly from the Insurance Company, or something; I don't know; there was some fellow there and he asked me about it."

The remainder of the cross-examination was short and at the end thereof counsel for the plaintiff moved that the reference to the Insurance Company be stricken from the record, whereupon the court sustained the motion and directed the jury to disregard the statement. It will be noticed that the statement of the witness was elicited by counsel for the defense. It was inadvertent. No bad faith appears. No objection was made to it at the time it was received nor was any motion made to withdraw a juror and continue the case. In this situation it can not be the basis of a finding of prejudicial error in this court.

A witness, Ostroskey, who was riding in the front seat with plaintiff at the time of the accident, was on the stand

for the plaintiff. On cross-examination he was confronted with a statement in writing, purporting to have been signed by him, which was made to C. L. Post. The cross-examination of Ostroskey was extended and he denied having signed the statement and repudiated some of the subject matter found therein and in an explanation of his position said that __e had told Mr. Post when the statement had been reduced to writing that it was inaccurate in particulars. During the cross-examination, Ostroskey grabbed the statement which was exhibited to him and tore it in two and threw it to the floor. The court immediately took cognizance of the situation, fined the witness $5.00, required him to pay the fine, and then after an apology permitted him to proceed with his tstimony. The situation presented was developed during the questioning of the witness by counsel for the defendant. Nothing that the plaintiff's counsel said or did in any wise provoked the outburst of temper. Counsel for the defendant made no comment, offered no objection to the action of the court. The normal effect of the conduct of the witness would be detrimental to the party whose witness he was. Nothing is found which would overcome this probable reaction, nor does anything appear ▇▇▇▇▇▇ from which it may be inferred that the cause of the defendant was prejudiced in any particular by the misconduct of the witness.

The jury allowed $480.82 for hospital, doctor and medical expenses and it is insisted that the evidence supported this claim to the extent of $185.32 only and it is therefore assumed that the judgment, as it now stands, is excessive by the difference between $480.82 and $185.32. This inference is not properly drawn. We do not have in such form as that we may consider it the opinion of the trial court in reducing the amount of the verdict but we have the judgment entry and it ▇▇▇▇▇▇ will be presumed that what the court did was

regular and valid and that he only permitted the verdict to stand in an amount consonant with the evidence.

It is urged that the verdict was stimulated by passion and prejudice. The court in the judgment entry expressly found that although the amount of the verdict was excessive it was not the result of passion or prejudice. An examination of this record is convincing that this verdict could not have been set aside had the amount thereof remained at the sum fixed by the jury. The defendant may be assured that the reduction in the amount carried into judgment against him is convincing that he had the benefit of careful and capable representation of his cause. Certainly there is nothing in the amount of the verdict, as now fixed, nor in the record, which discloses that any part of the sum fixed was not the result of deliberate, careful and impassionate consideration.

Finally it is urged that the verdict is against the manifest weight of the evidence. It is not necessary to discuss this claim at length. It is true, as is almost invariable in any contested case, that there was conflict in statements, not only as between witnesses for opposite sides but in particulars the jury could have concluded that certain of the witnesses for the plaintiff made statements prior to the ▇▇▇▇▇▇ trial which were in conflict with their testimony at that time. This presents nothing more than a question of credibility of the witnesses. **Pope v Mudge, 108 Oh St 192. Painesville Theatre Co. v Lautermilch, 118 Oh St 167.** It was the province of the jury to ▇▇▇▇▇▇ say, under all the facts and circumstances, first, whether or not any of the witnesses had made any contradictory statements and second, if so, which statement was truthful. It should be noted that there were a number of witnesses for the plaintiff testifying to material and controlling facts, who had made no contradictory statements and whose versions of the occurrences were only dis-

puted by one witness and by such of the physical facts as could be marshalled which might inferentially weaken the force of their evidence.

Much of the controversy to which the argument is directed relates to the time when, the place where and conditions under which the plaintiff passed the truck on the hill as she approached the curve at the bottom thereof. A fair consideration of the evidence seems to definitely support the claim of the plaintiff and her witnesses that that truck was passed on this hill at a considerable distance before the time of the accident and therefore had no part or effect in producing the result which occurred at the bottom of the hill.

We find no prejudicial error in any of the particulars which we have considered nor in any of the errors assigned. The judgment will be affirmed.

GEIGER and BARNES, JJ, concur.